IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| MICHAEL HORTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CIVIL ACTION NO. 1:20-464-TFM-MU |
| | ) | |
| CAPTAIN GILCHRIST, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**REPORT AND RECOMMENDATION**

Plaintiff Michael Horton, an Alabama prison inmate proceeding *pro se* and *in forma pauperis*, filed a complaint under 42 U.S.C. § 1983.  This action has been referred to the undersigned for appropriate action pursuant to 28 U.S.C. § 636(b)(1)(B) and S.D. Ala. GenLR 72(a)(2)(R).  This matter is before the Court on Defendants' motion for summary judgment (Doc. 43) and includes the Court's consideration of Michael Horton's Declaration/Filing of March 3, 2023. (Doc. 46).  For the reasons discussed herein, it is recommended that this motion be **GRANTED** and that this action be dismissed in its entirety.

I.    **COMPLAINT.**

Plaintiff Horton alleges that he was strip-searched in the presence of two female correctional officers in violation of his First and Fourteenth Amendment rights. According to Horton, the Alabama Department of Corrections K-9 Bureau ("ADOC K-9 Team") entered Fountain Correctional Facility ("Fountain" or "the prison") on May 21, 2020, to search for contraband.  At the time of the search, Horton was in the prison barber shop, working as a barber.  He alleges that two unnamed members of the ADOC K-9 Team entered the prison's barber shop but left the area after determining no illegal

contraband was present.  Approximately 20 minutes later, the ADOC K-9 Team brought Jessie Luckie (white, male inmate) into the barber shop, in a choke hold, and pushed him into G-Dorm's restroom area and strip-searched Inmate Luckie.  Following the contraband search of G-Dormitory, Lieutenant Banda[1] asked his team if anyone had "search[ed] the barber man."  (Doc. 1 at 8).  When there was no positive response, Captain Gilchrist instructed Horton to turn and face the wall and he performed a pat down search of Horton.  During the pat down search, Captain Gilchrist asked Horton if he was wearing one or two pair of underwear.  Lieutenant Banda then instructed Horton to take off all his clothes - while standing in the middle of the hallway in front of two female correctional officers.  Horton protested that he was "a Christian and it was against his religious practices to expose his naked body to any woman other than his wife."  (*Id*.).  Captain Gilchrist followed with a direct order for Horton to take off his shirt and underwear, and Horton complied.  Horton was further ordered" to bend over, pull the cheeks of his buttocks up and cough in front of female Correctional Officer[]s T. Cunningham and T. Dailey."  (*Id*.).  Horton claims that inmates in the cell block also watched the strip search, causing him humiliation.  After the ADOC K-9 Team left the prison, Horton spoke to Officer Dailey, who informed him, she saw the incident and "that they're not supposed to strip search you in the presence of any female", that "[t]hey were supposed to have taken [him] into the rest room."  (*Id*. at 9).

---

[1]    Lieutenant Thomas Banda was substituted in place of "Lt. Vander" as a named defendant in this action.  (*See* Docs. 1, 31, 37, 39).

Horton requests compensatory and punitive damages in the amount of $100,000, respectively, from each Defendant, as well as declaratory and injunctive relief regarding the practice of cross-gender strip searches of inmates.

## II.    SUMMARY JUDGMENT STANDARD.

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248 (1986) ("[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."); *Garczynski v. Bradshaw*, 573 F.3d 1158, 1165 (11th Cir. 2009) ("[S]ummary judgment is appropriate even if 'some alleged factual dispute' between the parties remains, so long as there is 'no genuine issue of material fact.'") (emphasis in original) (citation omitted).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant can meet this burden by presenting evidence showing there is no dispute of material fact or by showing or pointing out to the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id*. at 322-24.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or

by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." On the other hand, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in its favor.

*ThyssenKrupp Steel USA, LLC v. United Forming, Inc.*, 926 F. Supp. 2d 1286, 1290 (S.D. Ala. 2013) (internal citations omitted). "To defeat a motion for summary judgment, the nonmoving party may not rely on 'mere allegations.' It must raise 'significant probative evidence' that would be sufficient for a jury to find for that party." *LaChance v. Duffy's Draft House, Inc.*, 146 F.3d 832, 835 (11th Cir. 1998) (citations omitted). In other words, there is no genuine issue for trial where "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party[.]" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986).

In considering whether Defendants are entitled to summary judgment in this case, the Court views the facts in the light most favorable to Plaintiff. *See Comer v. City of Palm Bay, Fla.*, 265 F.3d 1186, 1192 (11th Cir. 2001) (per curiam) ("We view the evidence and all factual inferences raised by it in the light most favorable to the non-moving party, and resolve all reasonable doubts about the facts in favor of the non-moving party."). The requirement to view the facts in favor of the nonmoving party extends only to "genuine" disputes over material facts. *Garczynski*, 573 F.3d at 1165. "A genuine dispute requires more than 'some metaphysical doubt as to material facts.'" *Id.* (citations omitted). A "mere scintilla" of evidence is insufficient; the nonmoving party must produce substantial evidence in order to defeat a motion for summary judgment. *Id.* In addition, "[t]here is no burden upon the district court to distill every potential

argument that could be made based upon the materials before it on summary judgment." *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995). More importantly, where "opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

III.   **DISCUSSION AND ANALYSIS**

There is no dispute that the ADOC K-9 Team entered Fountain on May 21, 2020, to conduct an unannounced institutional search to locate and confiscate contraband within the prison.  The search, led by Gilchrist, resulted in the removal of 11 cell phones, 2 cell phone chargers, 25 inmate made knives, 31.1 grams of marijuana, 80.2 grams of a drug substance known as "Cookie Dough", 60.4 grams of Flakka sticks, 11.5 grams of Flakka, 17.4 grams of Crystal Meth, 12 pieces of Suboxone, and 4 grams of a white crystal-like substance, as well as disciplinary actions being brought against 12 inmates. (*See* Doc. 32-4).  No contraband was found on or in the possession of Horton nor were disciplinary charges brought against him.  While both Gilchrist and Banda affirm having no recollection of Horton or the alleged strip search of Horton, for purposes of this motion, the Court takes Horton's allegations in the complaint as true.  Defendants Gilchrist and Banda contend no constitutional violation occurred in the search of Horton and have asserted the defense of qualified immunity as to Horton's allegations against them.

The United States Supreme Court "has repeatedly stressed the importance of resolving qualified immunity questions at the earliest possible stage in litigation." *Bloom*

*v. Alvereze*, 498 F. App'x 867, 878 (11th Cir. 2012) (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). Qualified immunity protects government officials performing discretionary functions from liability for civil damages. *Wilson v. Layne,* 526 U.S. 603, 609 (1999). "To establish that the challenged actions were within the scope of his discretionary authority, a defendant must show that those actions were (1) undertaken pursuant to the performance of his duties, and (2) within the scope of his authority." *Harbert Intern., Inc. v. James,* 157 F.3d 1271, 1282 (11th Cir.1998) (citing *Lenz v. Winburn,* 51 F.3d 1540, 1545 (11th Cir.1995)). The Court finds that it is apparent from the allegations in Horton's Complaint, as well as Defendants' answers and special reports, that Defendants were acting within the scope of their discretionary authority at the time of the incident. "Once the governmental officials have established that they were acting within their discretionary authority, the burden shifts to [Horton] to show that qualified immunity is not appropriate." *Id.*

The Supreme Court has mandated a two-step analysis for resolving qualified immunity claims. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). First, a court must decide whether the facts that a plaintiff has alleged "show the [defendant's] conduct violated a constitutional right." *Id.* Second, the court must decide "whether the right was clearly established." *Id.* "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 202. Courts have discretion whether to address first the existence of a constitutional violation or the clearly established nature of the right allegedly violated. *Pearson*, 555 U.S. at 236; *accord Reichle v. Howards*, 566 U.S. 658, 663 (2012).

Strip and body cavity searches, which form the basis of Horton's complaint allegations, are considered "searches" of "persons" under the Fourth Amendment, which guarantees the "right of the people to be secure in their persons, houses papers, and effects, against unreasonable searches and seizures."  U.S. Const. amend. IV; *Florence v. Bd. of Chosen Freeholders of Cnty. of Burlington*, 566 U.S. 318, 326-27, 339 (2012).  In *Bell v. Wolfish*, the Supreme Court assumed without deciding "that inmates, both convicted prisoners and pretrial detainees, retain some Fourth Amendment rights upon commitment to a corrections facility." 441 U.S. 520, 558 (1979). The test of a Fourth Amendment violation is reasonableness and requires a balancing of the need for the particular search against the invasion of personal rights that the search entails.  *Id*. at 559.  In the prison context, this requires courts to "consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted."  *Id*.  Such analysis is coupled with the premise that "correctional officials must be permitted to devise reasonable search policies to detect and deter the possession of contraband in their facilities" and that determination of whether a policy is reasonably related to a legitimate security interest lies within the province and expertise of correctional officials. *Florence*, 566 U.S. at 328 (2012) ("This Court has repeated the admonition that, in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations courts should ordinarily defer to their expert judgment in such matters.") (internal quotations and citations omitted)). The law is clear that there is nothing inherently unreasonable about strip searches and visual body cavity searches, *Powell v. Barrett*, 541 F.3d 1298, 1305-06 (11th Cir. 2008), as long as they are

conducted in a reasonable manner.  *Evans v. Stephens*, 407 F.3d 1272, 1281 (11th Cir.

2005).  "When a prison regulation or policy 'impinges on inmates' constitutional rights,

the regulation is valid if it is reasonably related to legitimate penological interests."

*Turner v. Safley*, 482 U.S. 78, 89 (1987).

Based on Horton's complaint, the strip search was conducted as part of an

institution-wide search which resulted in the recovery of drugs and other contraband.

According to Horton, he was instructed to take off his clothing after a pat down search

raised questions about the thickness of Horton's underwear, giving rise to challenge

what was under Horton's clothing.  There are no facts in the complaint to suggest that

the strip search was any longer in duration than needed to confirm that Horton had no

contraband on him, nor do facts suggest that any Horton was strip searched for any

reason besides recovering possible contraband.

Notably, in response to this motion, Horton submits a "declaration" containing

allegations significantly different from those provided in his complaint. (Doc. 46).

Specifically, Horton claims, for the first time in two and half years, the following

summarized allegations:

He was strip searched twice, first by Defendant Banda around the time Inmate
Luckie was strip searched, and 20 minutes later in the hallway when Defendant Banda
asked if anyone had searched the barber man.  The search was humiliating and "more
likely than not racially motivated because they didn't do the white guy like that."  (*Id*. at
2). He has been in a state of depression since the search, requiring him to seek help
from the mental health specialist and counseling from his family, pastor, and
correctional officers at the facility. "Defendants had no penological reason to conduct a
second strip search of Horton."  (*Id*. at 4). "[T]he second strip search conducted was
outside the scope of their duties as the institutional search had come to an end."  (*Id*.).
Defendants' strip search violated the Religious Freedom Restoration Act. Horton
requests nominal damages.

Horton's "declaration", however, will not be considered by the Court on this motion. While traditional affidavits sworn under oath before a notary may be used to overcome summary judgment, Fed. R. Civ. P. 55(c)(4), unsworn statements may not be considered by a court in evaluating a motion for summary judgment.  *Carr v. Tatangelo*, 338 F.3d 1259, 1273 n.26 (11th Cir. 2003).  There is an exception to this rule.  An unsworn declaration may be used to defeat summary judgement if the declarant signs and dates the document as true under penalty of perjury, in substantially the following form:

> "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date). (Signature)."

28 U.S.C. § 1746(2).  Here, Horton's declaration utilizes the proper "under penalty of perjury" language, but he fails to sign or date the document.  Because Horton's declaration is neither signed nor dated, he has failed to comply with § 1746 and his "declaration" may not be considered at this stage.  *Roy v. Ivy*, 53 F.4th 1338, 1348-50 (11th Cir. 2022) ("[W]e conclude that Roy's unsworn statement does not comply with § 1746 and the district court correctly did not consider Roy's unsworn statement, even though he labeled it as an "affidavit.").  Moreover, the additional facts and allegations contained in Horton's declaration amount to an amended complaint and may not be accepted in an argument opposing summary judgment.  *Miccosukee Tribe of Indians of Florida v. United States,* 716 F.3d 535, 559 (11th Cir.2013) ("In this circuit, a plaintiff cannot amend his complaint through argument made in his brief in opposition to the defendant's motion for summary judgment.... We therefore decide the Tribe's appeal of the Count IV judgment by assessing the record in the light of Count IV's allegations, as stated in the complaint.").  Horton asserts new claims of an additional strip search,

claims the search was racially motivated, conducted in violation of the RFRA, and caused him long-term mental health issues.  Asserting such substantial claims, for the first time, in a response to summary judgment is simply an improper extension of the complaint, amounting to an amended complaint, and is not allowed at the summary judgment stage of the proceedings.  *GeorgiaCarry.Org, Inc. v. Georgia,* 687 F.3d 1244, 1258 n. 27 (11th Cir.2012) ("It is well-settled in this circuit that a plaintiff may not amend the complaint through argument at the summary judgment phase of proceedings.").  For these reasons, Horton's "declaration" will not be considered in opposition to this motion.

Relying on Horton's sworn allegations in his complaint, the scope and justification for the strip search were reasonable.  Indeed, the question here, and the only challenge asserted by Horton, is the manner (and arguably place) in which the strip search was performed by Defendants – that is, that the search was conducted in front of two female correctional officers, in the hallway where inmates from G-dormitory could view him. Horton contends "expos[ing] his naked body to any woman other than his wife" is against his religious practices as a Christian. (Doc. 1 at 8).   Because Defendants have asserted a qualified immunity defense, Horton must show that the strip search was not only a constitutional violation but that any objectively reasonable officer would be on notice that the strip search performed by Gilchrist and Banda was clearly unlawful. *Powell v. Snook*, 25 F.4th 912, 920 (11th Cir. 2022). ("The qualified immunity doctrine protects an officer unless at the time of the officer's supposedly wrongful act the law "was already established to such a high degree that every objectively reasonable" officer in his place "would be on notice" that what he was doing was "clearly unlawful given the circumstances.") (internal quotation omitted).

Courts have repeatedly acknowledged that "most people have a special sense of privacy in their genitals, and involuntary exposure of them in the presence of people of the other sex may be especially demeaning and humiliating." *Fortner v. Thomas*, 983 F.2d 1024, 1030 (11th Cir. 1993). Indeed, this circuit's precedent "clearly establish[es] the principle that, absent a legitimate reason, individuals maintain a right to bodily privacy, in particular the right not to have their genitals exposed to onlookers." *Mitchell v. Stewart*, 608 F. App'x 730, 735 (11th Cir. 2015) (citing *Fortner*, 982 F.2d at 1030 and *Boxer X v. Harris*, 437 F.3d 1107, 1111 (11th Cir. 2006), *abrogated in part on other grounds by Wilkins v. Gaddy*, 559 U.S. 34 (2010)). The scope of this limited right, however, continues to be considered by courts on a case-by-case basis. *Id*. at 1030 ("Although we continue to approach the scope of the privacy right on a case-by-case basis, we now recognize that prisoners retain a constitutional right to bodily privacy.").

In *Fortner*, the Eleventh Circuit found the defendant officers' actions were clearly unlawful, where male prisoners claimed that female officers solicited them to "masturbate and otherwise exhibit their genitals for the female officers' viewing." 983 F.2d at 1027. In *Boxer X v. Harris*, the Eleventh Circuit found that a male prisoner stated a claim for violation of his privacy rights where he alleged that a female officer solicited him to masturbate for her viewing. 437 F.3d at 1111. In *Evans v. Stephens*, a strip and cavity search was deemed unreasonable and unconstitutional based on the totality of the circumstances, where plaintiff prisoners were strip searched in a broom closet, ridiculed, physical force was used, and each plaintiff was penetrated by an object in front of the other. 407 F.3d 1272, 1281-82 (11th Cir. 2005). The facts of these

cases, however, are easily distinguishable from Horton's, which is more aligned with the following cases:

In *Webb v. White*, our sister court determined no constitutional violation was found when three male detainees were taken from their cells to the showers and stripped searched in view of a female officer.  The court determined the "[t]he contours of Plaintiff's right to bodily privacy are not sufficiently clear so that Defendants would have understood that their alleged actions violate that right" and that Defendants were entitled to qualified immunity. *Webb v. White*, No. 8:07CV1396T27MSS, 2008 WL 4889116, at *4 (M.D. Fla. Nov. 12, 2008).

In *Moton v. Walker*, as part of a routine cell inspection, the defendant officer conducted a visual body cavity search of Moton that required Moton to remove his clothing, bend at the waist, spread his buttocks, and cough. Moton complied and was ordered to repeat the bending and coughing two more times after no contraband was found and while Moton's cellmate stood outside the cell. Moton sued alleging that the search violated his Fourth and Eighth Amendment rights because the officer never accused Moton of possessing contraband and the officer had a "lewd, sadistic, malicious smile on his face" with he conducted the search.  The Eleventh Circuit found the inspection of Moton's body was standard procedure; the location of the search in Moton's cell was acceptable, and the repeated examination did not rise to the level of a constitutional violation.  The Court held that the defendant was entitled to summary judgment on all claims and was entitled to qualified immunity.  545 F. App'x 856 (11th Cir. 2013).

In *McCreary v. Richardson*, a strip search was upheld as constitutional when conducted on a male prisoner in the presence of female officers.  McCreary, a Muslim prisoner was standing in the hallway with approximately a hundred other prisoners waiting to attend a Jumu'ah service (an obligatory day of assembly for Muslims), when McCreary began to question the defendant officer about his opinions of the Muslim faith and his treatment of Muslim prisoners.  In response to the disturbance, the defendant officer ordered a strip search of McCreary.  McCreary objected to the search, informing the officer that his religion did not allow him to be naked in front of females other than his wife.  The search was nevertheless conducted in the hallway in front of female officers and staff. The Fifth Circuit explained that strip searches have been upheld as constitutional when conducted in non-private areas, in the presence of non-essential personnel, and on male prisoners in the presence of female officers.  Thus, it could not be said that a reasonable officer would believe that the public strip search conducted by a male officer, on a male prisoner, in the presence of females, after a public disruption was contrary to clearly established law.  The Court maintained that "[p]recedent does not clearly establish that a reasonable officer could not perform the strip search in the most efficient manner possible without abandoning his post - the location where the incident occurred."  738 F.3d 651, 658-59 (5th Cir. 2013).

In *Smith v. Boyd*, our sister court determined that the strip search of a male prisoner in front of a female officer failed to rise to the level of an Eighth Amendment violation. "Specifically, the court determined that allowing female correctional officers unrestricted access to areas of prisons where they may, on occasion, view male inmates in the nude is reasonably related to valid penological goals." *Smith v. Boyd*, No.

2:09-CV-1055-MEF, 2012 WL 3230646, at *5 (M.D. Ala. July 5, 2012), *report and recommendation adopted,* No. 2:09CV1055-MEF, 2012 WL 3206229 (M.D. Ala. Aug. 6, 2012).

Here, the facts show that the strip search and visual cavity search of Horton was conducted as part of an institutional search for contraband. The search did not impose hardships atypical of ordinary prison life, and Horton has failed to show a liberty interest protected by the Due Process Clause. *Sandin v. Conner,* 515 U.S. 472, 483–84 (1995). Horton has further failed to demonstrate that the search was unreasonable or abusive in violation of the Fourth Amendment. *See Bell,* 441 U.S. 520. To the extent the search violated a prison policy or regulation because it was conducted in front of two female officers, Horton has failed to state a constitutional violation under § 1983. *See Adams v. Green,* 2:07–CV–309–WHA (WO), 2007 U.S. Dist. LEXIS 44676, 2007 WL 1663094 (M.D. Ala. May 18, 2007) (unpublished) (Complaint was dismissed as frivolous where prison officials engaged in conduct violating their own administrative regulations but not the Eighth or Fourteenth Amendment.). Horton's First Amendment claim gives the undersigned slightly more pause. Where a constitutional right of a prisoner may have been infringed by a prison regulation (here, a strip search), it must be determined whether the regulation was reasonably related to legitimate penological goals. Four factors are analyzed: (1) whether the regulation bears a rational connection to the legitimate governmental interest put forth to justify it; (2) whether there are available other alternative means of exercising the asserted rights; (3) the impact of accommodating the asserted right on the interest of inmates, prison personnel, and

prison resources generally; and (4) whether there is an absence of ready alternatives. *Turner,* 482 U.S. at 89-90.

There is no doubt that institutional contraband searches, as in this action, are rationally related to the legitimate penological interest of security, which is foremost to all other corrections goals. *Pell v. Procunier*, 417 U.S. 817, 823 (1974) ("[C]entral to all other corrections goals is the institutional consideration of internal security within the corrections facilities themselves."). No evidence exists that the conducted strip search was performed for any other reason but to further the penological interest of eliminating contraband from the facility. Thus, the likelihood of a constitutional violation is slim. However, the remaining *Turner* factors are unclear from the pleadings. That is, could the search have been conducted out of the sight of female officers or in a more private area? Was time of the essence? Was sufficient staff on hand to conduct the search in a different area or out of the sight of female officers? Regardless, Horton has failed to carry his burden of showing the existence of clearly established law to put Defendants on notice that their search violated any constitutional right. As such, Defendants are entitled to qualified immunity.

Horton has cited no case (and the undersigned has found none) which gives fair warning to Defendants that their conduct violated a constitutional right. *Gaines v. Wardynski*, 871 F.3d 1203, 1208 (11th Cir. 2017). To the contrary and as evidence by the cases previously cited, caselaw supports that strip searches conducted for the purpose of institutional security are constitutional, even when performed in the presence of other inmates, officers of the opposite sex, and against tenets of a prisoner's practiced religion. Moreover, nothing about the search in this action resembles the facts

of *Fortner*, *Boxer X*, or *Evans*, which involved abusive searches and typically sexualized touching.  Accordingly, these cases cannot be said to have put Defendants on notice that their conduct may have violated a bright-line constitutional rule.  For these reasons, Defendants are entitled to qualified immunity and barred from suit.

## IV.    CONCLUSION.

Based on the foregoing, the undersigned recommends that summary judgment should be **GRANTED**, and the claims against Defendants Gilchrist and Banda should be dismissed in their entirety.

The instructions that follow contain important information regarding objections to the report and recommendation of the Magistrate Judge.

### NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. ALA. GenLR 72(c).  The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object.  In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1.  To be specific, an objection must

identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

      **DONE** this the **27th** day of **March** 2023.


                    s/P. Bradley Murray
                    UNITED STATES MAGISTRATE JUDGE